**Exhibit "A"**
(Pleadings)

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>Ronda Nadine Baldwin-Kennedy, an individual dba Law Office<br>of Ronda Baldwin-Kennedy; Does 1 to 10 inclusive<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>Red Target, LLC dba SCJ Commercial Financial Services | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>VENTURA<br>SUPERIOR COURT<br>**FILED**<br><br>**NOV 16 2022**<br><br>**BRENDA L. McCORMICK**<br>Executive Officer and Clerk<br>BY:_____, Deputy<br><br>**Erica Martinez** |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Ventura, Civil Division<br>800 South Victoria Avenue, Ventura, CA 93009 | CASE NUMBER:<br>56-2022-00572153-CL-CL-VTA |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Gurstel Law Firm, P.C., Angie Hong Hoar, Jennifer Johnson, Christina Melhouse
3914 Murphy Canyon Rd., Ste. A125, San Diego, CA 92123   877-344-4002

| DATE:<br>*(Fecha)* **NOV 16 2022** | **Brenda L. McCormick** Clerk, by<br>*(Secretario)* _____ | , Deputy<br>*(Adjunto)* |
|---|---|---|

**Erica Martinez**

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

COM49119

PLD-C-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Gurstel Law Firm, P.C.
Angie Hong Hoan (#212152); Jennifer Thomas (#335997); Christina Melhouse (#201818)
3914 Murphy Canyon Road, Suite A125
San Diego, CA 92123
TELEPHONE NO: 877-344-4002          FAX NO. (Optional)   877-750-6335
E-MAIL ADDRESS (Optional): cacommercial@gurstel.com
ATTORNEY FOR (Name):   Plaintiff Red Target, LLC

VENTURA
SUPERIOR COURT

**FILED**

NOV 16 2022

BRENDA L. McCORMICK
Executive Officer and Clerk
BY:_____, Deputy

**Erica Martinez**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA
STREET ADDRESS: 800 South Victoria Avenue
MAILING ADDRESS: 800 South Victoria Avenue
CITY AND ZIP CODE: Ventura, CA 93009
BRANCH NAME: Hall of Justice - Civil Division

PLAINTIFF: Red Target, LLC dba SCJ Commercial Financial Services

DEFENDANT: Ronda Nadine Baldwin-Kennedy, an individual dba Law Office of Ronda Baldwin-Kennedy;

[✓] DOES 1 TO 10, inclusive

**CONTRACT**

[✓] COMPLAINT        [ ] AMENDED COMPLAINT (Number):

[ ] CROSS-COMPLAINT  [ ] AMENDED CROSS-COMPLAINT (Number):

| CASE NUMBER: |
|---|
| 56-2022-00572153-CL-CL-VTA |

**Jurisdiction (check all that apply):**
[✓] ACTION IS A LIMITED CIVIL CASE
    Amount demanded [✓] does not exceed $10,000
                [ ] exceeds $10,000 but does not exceed $25,000
[ ] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint
    [ ] from limited to unlimited
    [ ] from unlimited to limited

1. **Plaintiff** (name or names):
   Red Target, LLC dba SCJ Commercial Financial Services
   alleges causes of action against defendant* (name or names):
   Ronda Nadine Baldwin-Kennedy, an individual dba Law Office of Ronda Baldwin-Kennedy
2. This pleading, including attachments and exhibits, consists of the following number of pages: 15
3. a. Each plaintiff named above is a competent adult
       [✓] except plaintiff (name): Red Target, LLC dba SCJ Commercial Financial Services
           (1) [✓] a corporation qualified to do business in California
           (2) [ ] an unincorporated entity (describe):
           (3) [ ] other (specify):

   b. [ ] Plaintiff (name):
       a. [ ] has complied with the fictitious business name laws and is doing business under the fictitious name (specify):

       b. [ ] has complied with all licensing requirements as a licensed (specify):
   c. [ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.
4. a. Each defendant named above is a natural person
       [ ] except defendant (name):            [ ] except defendant (name):
       (1) [ ] a business organization, form unknown    (1) [ ] a business organization, form unknown
       (2) [ ] a corporation                    (2) [ ] a corporation
       (3) [ ] an unincorporated entity (describe):    (3) [ ] an unincorporated entity (describe):

       (4) [ ] a public entity (describe):        (4) [ ] a public entity (describe):

       (5) [ ] other (specify):             (5) [ ] other (specify):

\* If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.

Form Approved for Optional Use
Judicial Council of California
PLD-C-001 [Rev. January 1, 2007]

**COMPLAINT—Contract**

Code of Civil Procedure, § 425.12

PLD-C-001

| SHORT TITLE:<br>Red Target, LLC<br>v. Ronda Nadine Baldwin-Kennedy, et al. | CASE NUMBER: |
| --- | --- |

4.   *(Continued)*

   b. The true names of defendants sued as Does are unknown to plaintiff.

     (1) ☐ Doe defendants *(specify Doe numbers):* _____ were the agents or employees of the named defendants and acted within the scope of that agency or employment.

     (2) ☑ Doe defendants *(specify Doe numbers):* 1 to 10 _____ are persons whose capacities are unknown to plaintiff.

   c. ☐ Information about additional defendants who are not natural persons is contained in Attachment 4c.

   d. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

5. ☐ Plaintiff is required to comply with a claims statute, **and**

   a. ☐ has complied with applicable claims statutes, *or*

   b. ☐ is excused from complying because *(specify):*

6. ☐ This action is subject to ☐ Civil Code section 1812.10 ☐ Civil Code section 2984.4.

7. This court is the proper court because

   a. ☑ a defendant entered into the contract here.

   b. ☑ a defendant lived here when the contract was entered into.

   c. ☑ a defendant lives here now.

   d. ☑ the contract was to be performed here.

   e. ☐ a defendant is a corporation or unincorporated association and its principal place of business is here.

   f. ☐ real property that is the subject of this action is located here.

   g. ☐ other *(specify):*

8. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*

   ☑ Breach of Contract

   ☑ Common Counts

   ☐ Other *(specify):*

9. ☑ Other allegations:

   Business Financial Services Inc. assigned the receivable to Red Target, LLC who is now the lawful owner of the receivable with rights to enforce payment obligations

10. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for

   a. ☑ damages of: $5,837.00

   b. ☑ interest on the damages

     (1) ☐ according to proof

     (2) ☑ at the rate of *(specify):* 10 percent per year from *(date):* December 23, 2019

   c. ☑ attorney's fees

     (1) ☐ of: $

     (2) ☑ according to proof.

   d. ☐ other *(specify):*

11. ☐ The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers):*

Date: 11-2-2022

Angie Hong Hoar, Esq.

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

PLD-C-001(1)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Red Target, LLC v. Ronda Nadine Baldwin-Kennedy, et al. | |

1st       **CAUSE OF ACTION—Breach of Contract**
*(number)*

ATTACHMENT TO   [✓] Complaint   [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name):* Red Target, LLC dba SCJ Commercial Financial Services

    alleges that on or about *(date):* June 27, 2019

    a [✓] written   [ ] oral   [ ] other *(specify):*
    agreement was made between *(name parties to agreement):*
    Business Financial and Ronda Nadine Baldwin-Kennedy, an individual dba Law Office of Ronda

    [✓] A copy of the agreement is attached as Exhibit A, or
    [ ] The essential terms of the agreement [ ] are stated in Attachment BC-1 [ ] are as follows *(specify):*

BC-2. On or about *(dates):* December 23, 2019
    defendant breached the agreement by [ ] the acts specified in Attachment BC-2 [✓] the following acts
    *(specify):*
    Defendants Ronda Nadine Baldwin-Kennedy, an individual dba Law Office of Ronda
    Baldwin-Kennedy, failed to make payments as agreed pursuant to the Promissory Note and for
    which Defendant Ronda Nadine Baldwin-Kennedy, an individual, personally guaranteed
    payment

BC-3. Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or
    excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
    [ ] as stated in Attachment BC-4 [✓] as follows *(specify):*

    Money damages in the sum of $5,837.00

BC-5. [✓] Plaintiff is entitled to attorney fees by an agreement or a statute
       [ ] of $
       [✓] according to proof.

BC-6. [✓] Other:
    a. Interest at the rate of 10% per annum from December 23, 2019
    b. Costs of suit
    c. Business Financial Services Inc. assigned the receivable to Red Target, LLC dba SCJ
    Commercial Financial Services who is now the lawful owner of the receivable with right to
    enforce payment obligations

Page    3

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(1) [Rev. January 1, 2007]

**CAUSE OF ACTION—Breach of Contract**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

# EXHIBIT A

DocuSign Envelope ID: 30725520-A08F-473B-A8    7238DB1C39

**SECURED PROMISSORY NOTE**

**AXOS Bank**

APPROVED

*By pherrera at 10:46 am, Jun 28, 2019*

| | |
|---|---|
| Ronda Nadine Baldwin-Kennedy DBA Law Office of Ronda Baldwin-Kennedy / Ronda N Baldwin-Kennedy | |
| **Company** | |
| 1056 East Meta Street Suite #201, Ventura, CA, 93001 | CA |
| **Principal Place of Business** | **State of Organization** |
| Ronda Nadine Baldwin-Kennedy | |
| **Guarantor(s)** | |
| ████ /1972 | |
| **Guarantor(s) Date of Birth** | |
| 217 Smoke Tree Avenue, Oak Park, CA 91377 | |
| **Guarantor(s) Addresses** | |

| Bank Name | Bank Account Number (the "Business Account") | Bank Routing Number |
|---|---|---|
| Bank of America / Bank of America | ████ 4685 / ████ 0559 | ████ 0358 / |

| Principal Amount | Repayment Amount | Processing Fee | Origination Fee |
|---|---|---|---|
| $11,000.00 | $14,960.00 | $0.00 | $165.00 |
| Daily ACH Fixed | $79.00 | 1.3600 | |
| **Payment Frequency:** | **Payment Amount** | **Factor Rate** | |
| Daily/Weekly | | | |

**Higher Cost Loan**

This loan is a higher cost loan than loans which may be available through other sources. Before signing you should fully consider all costs and fees associated with this loan.

**Please note:**

By signing this Promissory Note you will be accepting certain legal and financial obligations and waiving certain legal rights. You are, therefore, advised to consult with an attorney, and such other professional advisors as you deem appropriate, regarding the legal, financial and tax consequences of entering into the transaction contemplated by this Secured Promissory Note prior to executing any document in connection therewith.

The remaining space on this page is intentionally left blank

DocuSign Envelope ID: 30725520-A08F-473B-A8      7238DB1C39

For value received, the Company hereby promises unconditionally to pay to the order of AXOS Bank, or its successors or assigns ("Holder"), in United States dollars ("Dollars" or "$") and in immediately available funds, the Repayment Amount set forth in the heading of this document, in full, as of the Maturity Date. The Repayment Amount shall be payable in the manner described below.

The Loan (defined below) contemplated by this Secured Promissory Note (the "Agreement") is being made for business purposes only. It is not being made for consumer, personal, family or household purposes. Company agrees, represents and warrants that it has requested the Loan for business purposes only, will not and shall not be used, directly or indirectly, for consumer, personal, family or household purposes and will not be used to fund dividends or distributions to its shareholders, partners, members or other owners of an equity interest in the Company.

A statement of the rights and obligations of Holder and Company, and the conditions, to which this Agreement is subject, follows:

**1. DEFINITIONS.** For the purposes of this Agreement, the following capitalized terms shall have the meaning ascribed to them below:

(i) "**ACH**" means Automated Clearing House; (ii) "**Additional Expenses**" means any costs or expenses of Holder that are designated as Additional Expenses under this Agreement; (iii) "**Affiliate(s)**" means, with respect to any given Person other than a partnership or limited liability company, any other Person directly or indirectly controlling, controlled by or under common control with such Person and with respect to a partnership, the partners of such partnership and with respect to a limited liability company, the members and managers of such limited liability company; (iv) "**Bankruptcy Code**" means the Bankruptcy Code of the United States, currently codified as Title 11, United States Code, as amended; (v) "**Business Account**" means the bank account identified as the Business Account in the heading of this Agreement; (vi) "**Business Day**" means any day that is not a Saturday, Sunday, federal holiday or a legal holiday in the State of California on which banking institutions in California are authorized or obligated by law or executive order to close; (vii) "**Cannabinoid**" means any of several compounds produced by marijuana plants that have medical and psychotropic effects; (viii) "**Collateral**" shall consist of all of the tangible and/or intangible personal property of the Company wherever located, whether now owned and hereafter acquired including, without limitation: (A) accounts, including, without limitation, Payment Card Receivables, whether now existing or created in the future; (B) chattel paper; (C) inventory; (D) equipment; (E) instruments, including, without limitation, promissory notes; (F) investment property; (G) documents; (H) deposit accounts; (I) letter of credit rights; (J) general intangibles; (K) supporting obligations; (L) proceeds and products of the foregoing; and (M) commercial tort claims; (ix) "**Factor Rate**" means the payment multiplier equal to the total Repayment Amount divided by the Principal Amount; (x) "**Issue Date**" means the earliest date on which AXOS Bank remits the Principal Amount, or any portion thereof, to, or applies the Principal Amount or any portion thereof for the benefit of or on behalf of, the Company; (xi) "**Lien**" means any mortgage, pledge, lien, assignment, security interest or other charge or encumbrance, or any agreement to create a lien; (xii) "**Marijuana Accessories**" means equipment, products, devices or materials of any kind that are intended or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, ingesting, inhaling or otherwise introducing marijuana into the human body; (xiii) "**Marijuana Products**" means products that have been manufactured and contain marijuana or an extract from marijuana, including concentrated forms of marijuana and products composed of marijuana and other ingredients that are intended for use or consumption, including edible products, beverages, topical products, ointments, oils and tinctures; (xiv) "**Maturity Date**" means the date that is exactly nine (9.00) _____ consecutive full calendar months after the Issue Date, provided, however, that if that date is not a Business Day, then the Maturity Date shall be the Business Day immediately preceding the date that is exactly nine (9.00) _____ consecutive full calendar months after the Issue Date; (xv) "**Payment Card Receivables**" means accounts receivable owed to the Company that are generated from debit, credit and charge cards accepted by Company for payment for goods and/or services; (xvi) "**Payment Date**" depending on the indicated Payment frequency, means either: (A) Daily: the Business Day immediately following the Issue Date and each Business Day thereafter up to and including the Maturity Date, or (B) Weekly: the Tuesday immediately following the Issue Date and each Tuesday thereafter up to and including the Maturity Date, provided, however, that if any such Tuesday is not a Business Day then the Payment Date shall be the Business Day immediately

preceding such Tuesday; (xvii) "**Person**" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint stock company, trust or other entity or organization; (xviii) "**Principal Amount**" means the disbursement amount and is the loan amount; (xix) "**Proceeds**" means all proceeds of, and all other profits, products, rents or receipts, in whatever form, arising from the sale, exchange, assignment or other disposition of Collateral; (xx) "**Repayment Amount**" means the total repayment amount and includes the Principal Amount, interest and fees; (xxi) "**Secured Obligations**" means (A) Company's obligations under this Agreement; (B) all of Company's present and future obligations to Holder; (C) the repayment of (1) any amounts that Holder may advance or spend for the maintenance or preservation of the Collateral and (2) any other expenditures that Holder may make under the provisions of this Agreement for the benefit of Company; (D) all amounts owed by Company under any modification, renewals or extensions of any of the foregoing obligations; (E) all other amounts now or in the future owed by Company to Holder; and (F) any of the foregoing that arises after the filing of a petition by or against Company under the Bankruptcy Code, even if such obligation does not accrue because of the automatic stay under Bankruptcy Code §362 or otherwise; (xiix) "**Security Interest**" means the security interest in the Collateral granted hereunder securing the Secured Obligations; and (xxiii) "**UCC**" means the Uniform Commercial Code as in effect on the date hereof in the State of California; provided, that if by reason of mandatory provisions of law, the perfection or the effect of perfection or non-perfection of the Security Interest is governed by the Uniform Commercial Code as in effect in a jurisdiction other than California, "UCC" means the Uniform Commercial Code as in effect is such other jurisdiction for purposes of the provisions hereof relating to such perfection or effect of perfection or non-perfection; any term used in the UCC and not defined in this Agreement has the meaning given to the term in the UCC.

**2. LOAN; EFFECTIVE DATE; TERM.** Holder agrees to make a term loan of the Principal Amount set forth in the heading of this Agreement (the "Loan") to Company subject to the terms and conditions and based upon the representations and warranties contained in this Agreement. The term of this Agreement (the "Term") shall commence on the date that Holder accepts this Agreement as conclusively evidenced by the date of Holder's signature below. The foregoing notwithstanding, Holder may postpone, without penalty, the disbursement of any or all of the Principal Amount to the Company until all Security Interests have been perfected, it has received all required personal guarantees and any other documentation required by Holder, and all conditions precedent to the disbursement of Principal Amount have been satisfied as determined by Holder in its sole discretion.

**3. OBLIGATION TO REPAY LOAN.**

(a) On each Payment Date Company shall pay to Holder via ACH debit to the Business Account identified by Holder, the Payment until the entire Repayment Amount has been paid. All amounts due under this Agreement and not previously paid shall be payable on the Maturity Date. In the event of a shortfall in any such payment, Company shall make payment in good funds at the office of Holder.

(b) Upon the occurrence, and during the continuation, of an Event of Default, the interest rate on the Loan shall be increased by five (5) percentage points and the Payment shall be increased to assure timely payment of any increased interest and/or fees, as determined by Holder in its sole discretion Holder shall provide Company of notice of such determination and the revised Payment Amounts, but Holder's failure to provide such notice shall not reduce Company's liability therefor or excuse non-payment thereof. By way of example, and not by way of limitation, if the interest rate on the Loan is nineteen percent (19%) per annum, then the annualized interest rate on the Loan shall instead be twenty-four percent (24%) per annum upon the occurrence of and during the continuation of an Event of Default.

**4. OBLIGATION TO PAY TRANSACTION AND PROCESSING FEES.** In addition to any other fees described in the Agreement, Company agrees to pay the following fees:

(i) **Origination Fee:** A one-time non-refundable Origination Fee in the amount set forth in the heading of this Agreement, which fee shall be immediately deducted from the proceeds of the Principal Amount and retained by Holder;

(ii) **Returned Payment Fee:** A Returned Payment Fee in the amount of the lesser of fifteen Dollars ($15.00) or the maximum amount permitted by law if any of Company's payments, including ACH debits initiated by Holder, is returned unpaid or dishonored for any reason; and



DocuSign Envelope ID: 30725520-A08F-473B-A:      7238DB1C39

(iii) **Late Fee:** A Late Fee in the amount of four percent (4%) of any Payment Amount not received by Holder on the scheduled due date thereof as provided in this Agreement.

## 5. PAYMENTS

(a) The obligations created under this Agreement shall be repaid by the Company in U.S. Dollars and shall be paid free and clear of, and without reduction by reason of, any deduction, setoff, or counterclaim. Payment shall be made either as specified in Section 3(a) or by wire transfer, cash, ACH payment or debit, cashier's check or money order to the address designated by Holder.

(b) Company shall not make any partial payment marked, whether on the instrument itself or by a separate, accompanying or attached writing, with restrictive language such as "payment in full", "without recourse" or similar language which purports to limit Company's obligation to Holder. If Company makes such a payment, the payment shall be deemed a partial payment or a "payment on account," and the purported limitation shall be deemed not to have been accepted by Holder and null and void for all purposes as if never included.

(c) Holder reserves the right to apply all payments made by the Company to Company's outstanding Secured Obligations in any order and in any manner, in Holder's sole discretion.

(d) Company may prepay the Repayment Amount in full before the Maturity Date, but any prepayment will not reduce the total Repayment Amount owed.

## 6. REPRESENTATIONS & WARRANTIES OF THE COMPANY. The Company represents and warrants to the Holder that:

(a) (i) **If Company is a Corporation**, limited liability company, limited partnership or general partnership, then it is validly existing and in good standing under the laws of its state of organization; it has all requisite power and authority to own, lease, pledge and operate its properties and assets and to carry on its business as presently conducted; it has all requisite power and authority to execute and deliver this Agreement and to perform all of its obligations and undertakings, and to carry out the transactions contemplated, under this Agreement; and the execution and delivery of, and the performance of all obligations of Company under this Agreement have been duly and validly authorized by all necessary action; (ii) If Company is a Sole Proprietorship, then the natural person who is the sole proprietor has all requisite power and authority to own, lease, pledge and operate its properties and assets and to carry on its business as presently conducted; and has the full and unrestricted legal capacity to execute and deliver this Agreement and to perform all of his or her obligations and undertakings, and to carry out the transactions contemplated, under this Agreement.

(b) Company's principal place of business, and the place where it keeps its records concerning its accounts, contract rights and other properties, is the Principal Place of Business as set forth in the heading of this Agreement;

(c) The exact legal name of Company is as set forth in the heading of this Agreement;

(d) The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereunder, and compliance with the provisions of this Agreement, do not and will not (A) violate the certificate of incorporation, limited liability company certificate, limited liability company agreement, partnership agreement, bylaws or other organizational document of Company; (B) conflict with, or result in any violation, of any applicable law, rule, regulation, judgment, injunction, order or decree; or (C) conflict with, constitute a default, or entitle any Person or entity to receipt of notice or to a right of consent, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a benefit, or to any increased, additional, accelerated or guaranteed rights or entitlement of any Person or entity, or result in the creation of any claim on the properties or assets of Company, under any provision of any agreement or other instrument binding upon Company;

(e) Company is solvent, is generally able to pay its debts as they come due, and has not incurred debts beyond its ability to pay those debts;

(f) There is no action, suit, claim, investigation or legal or administrative or arbitration proceeding pending or currently threatened whether at law or in equity or before any federal, state, local, foreign or other court, governmental department, commission,

board, bureau, agency or instrumentality (collectively, "Governmental Authorities") against Company;

(g) All organization papers and all amendments thereto of Company have been duly filed and are in proper order and any capital stock, membership interests, or partnership interests issued by Company and outstanding were and are properly issued and all books and records of Company are accurate and up to date and will be so maintained;

(h) Company (A) is subject to no pending or threatened litigation, claim, judgment, award, decreed, order, governmental rule or regulation or contractual restriction that could have a material adverse effect on its financial condition, business or prospects; and (B) is in compliance with its organization documents and by-laws, all contractual requirements by which it may be bound and all applicable laws, rules and regulations other than laws, rules or regulations the validity or applicability of which it is contesting in good faith or provisions of any of the foregoing the failure to comply with which cannot reasonably be expected to materially adversely affect its financial condition, business or prospects or the value of the Collateral;

(i) Company is in compliance with all statutes, rules, regulations, orders or restrictions of all applicable Governmental Authorities; all federal, state, local and foreign tax returns and tax reports, and all taxes due and payable arising there from required to be filed by Company have been or will be filed and paid, on a timely basis (including any extensions); all such returns and reports are and will be true, correct and complete; Company has disclosed to Holder in writing all of its material liabilities and, to the best of its knowledge, knows of no material contingent liabilities, except current liabilities incurred in the ordinary course of business consistent with past practice; Company's accounts receivable are generated in the ordinary course of the conduct of commerce or business;

(j) No Person other than Company has any interest in or claim against the Collateral;

(k) Company is not the owner of any commercial tort claims as of the date of execution of this Agreement, and to the extent it becomes owner of any commercial tort claims subsequent to the date of this Agreement, it will assign same to Holder as Collateral and cooperate with Holder and take such actions and execute and deliver such documents as Holder shall reasonably request, in perfecting such Security Interest; and

(l) it is not engaged in the business of manufacturing, distributing or dispensing Cannabinoid, Marijuana Products or Marijuana Accessories, nor is any property owned by Company (whether or not securing the loan made hereunder) being utilized by Company, or any third party, for the purpose of manufacturing, distributing or dispensing any of the foregoing.

## 7. COVENANTS OF THE COMPANY.

(a) **Insurance.** Company shall maintain adequate insurance providing coverage consistent with that ordinarily maintained by similarly situated businesses and provide evidence of such insurance to Holder upon reasonable request and shall maintain such insurance as Holder may require with respect to the Collateral, in form, amount and coverage acceptable to Holder, naming Holder as loss payee.

(b) **Use of Proceeds.** The Loan contemplated by this Agreement is being made for business purposes only. As material inducement to Holder to make the Loan, Company covenants and agrees that neither the Principal Amount nor any portion thereof will be used for consumer, personal, family or household purposes. Company agrees that it has requested the Loan for business purposes only, and not for consumer, personal, family or household purposes. Company's representation and commitment that it is not using the Principal Amount for consumer, personal, family or household purposes means that neither it nor its principals will be entitled to the benefits of certain important duties imposed upon entities making loans for consumer, family, household or personal purposes, and/or to the benefits of certain important rights conferred upon consumers, pursuant to federal or state law. Company agrees that a breach by Company of the provisions of this section will not affect Holder's right to (i) enforce Company's promise to pay for all amounts owed under this Agreement, regardless of the purpose for which the Loan is in fact obtained or (ii) use any remedy legally available to tender, even if that remedy would not have been available had the Loan been made for consumer purposes. The Principal Amount shall be used solely for one or more of the following business purposes: (i) to buy merchandise, inventory or related goods that Company will rent

· · DocuSign Envelope ID: 30725520-A08F-473B-A8'    7238DB1C39

or sell its customers; (iii) to buy equipment, inventory or other goods for use in Company's business; (iii) for training or other services needed in Company's business; or (iv) to make improvements to the Company's place of business. Company may not use any part of the Principal to make any distribution to or to pay any dividend to any shareholder, member, partner or owner of the Company. Holder shall be under no obligation to verify the proper application or use of the proceeds of the Loan.

(c) **Preservation of Collateral.** All Collateral (or records of Collateral that is composed of accounts, chattel paper or general intangibles) shall be located at Company's Principal Place of Business. Company shall not sell, offer to sell, transfer or otherwise dispose of any Collateral, except for inventory sold and accounts collected in the ordinary course of Company's business. Company shall not sell, offer to sell, transfer or otherwise dispose of any Collateral for less than the fair market value of such Collateral. Company shall keep and maintain the Collateral in good order, repair and condition. Company shall immediately notify Holder in the event that any Collateral is lost, stolen or damaged.

(d) **Change in Organization and Operation.** The Company shall not, without the prior written consent of Holder: (i) incur any indebtedness (other than trade payables incurred in the ordinary course of business), (ii) incur any obligation or liability (contingent or otherwise) in an amount, in the aggregate, in excess of twenty-five thousand Dollars ($25,000.00), (iii) grant, or permit to be created any Lien other than the Security Interest, (iv) merge or consolidate with another entity, which merger or consolidation results in less than fifty percent (50%) of the outstanding voting securities of the resulting entity being owned by the then existing holders of securities of the Company, (v) transfer, assign, license, sell, lease or otherwise dispose of all or substantially all of its assets to a Person that is not a wholly-owned subsidiary of the Company; provided, that the Company shall cause any such subsidiary to comply with the provisions of this Section 7(d), (vi) close the Business Account (the Company shall promptly deposit all revenues received in the ordinary course of business in the Business Account) or (vii) open or maintain any checking account other than the Business Account.

(e) **Taxes, Levies and Assessments.** Company shall file all federal, state and local tax returns when due, shall pay all taxes, levies and assessments when due, and shall provide Holder with evidence of such filing and payment upon Holder's request.

(f) **Further Liens Prohibited.** Company shall not permit any Liens to be imposed upon the Collateral. Company shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any Lien, Security Interest, encumbrance or charge, other than the Security Interest. If a non-permitted Lien is imposed upon any Collateral without Company's consent, then Company shall discharge such Lien within five (5) Business Days of its imposition.

(g) **Holder's Right of Inspection.** Company shall permit Holder and Holder's designated representatives to examine and photograph the Collateral and the interior and exterior of Company's place of business, during normal business hours.

(h) **Company to Hold Holder Harmless.** Company shall indemnify and hold Holder harmless from all damages, liabilities, losses, costs and expenses (including attorney's fees) that Holder suffers as a result of Company's breach of any obligation in this Agreement, or of the failure of any representation or warranty to be true when made or to continue to be true.

(i) **Prohibited Substances:** Company shall not engage in the business of manufacturing, distributing or dispensing Cannabinoid, Marijuana Products or Marijuana Accessories, nor shall any property owned by Company (whether or not securing the loan made hereunder) be utilized by Company, or any third party, for the purpose of manufacturing, distributing or dispensing any of the foregoing.

**8. EVENTS OF DEFAULT.** Each of the following events ("Events of Default") shall constitute a default under this Agreement:

(i) the Company fails to pay the Payment Amount when due, or any fees or any other amount payable hereunder when due, or the Holder is unable to collect any payment or debit of Company when due;

(ii) the Company fails to observe or perform any covenant or agreement made in this Agreement, or any representation, warranty, certification or statement made by the Company in, or delivered pursuant to, this Agreement shall prove to have been incorrect in any material respect when made (or when deemed made);

(iii) the Company defaults under any agreement with any third party that, in Holder's sole discretion, is material to its business or that constitutes a lease of real or personal property or that constitutes an agreement for the loan of money;

(iv) a judgment or order for the payment of money is rendered against the Company which continues unsatisfied and unstayed for a period of ten (10) calendar days;

(v) there is filed against Company either (A) a federal tax lien in favor of the United States of America or of any political subdivision of the United States of America, or (B) a state or local tax lien in favor of any state of the United States of America or any political subdivision of a state;

(vi) the Company undergoes a change of control, meaning a new Person or entity obtains a fifty percent (50%) or greater controlling or ownership interest;

(vii) the Company commences a voluntary case or other proceeding, or consent to an involuntary case, seeking liquidation, reorganization or other relief with respect to itself or its debts under the Bankruptcy Code or under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property (collectively, "Bankruptcy Relief"), or makes a general assignment for the benefit of creditors, or fails generally to pay its debts as they become due, or legally dissolves, or ceases doing business as a going concern, or takes any corporate, partnership or limited liability company action to authorize any of the foregoing, or fails to take any action necessary to continue in good standing under the laws of the state of its organization;

(viii) an involuntary case or other proceeding seeking Bankruptcy Relief shall be commenced against the Company and shall remain undismissed for a period of sixty (60) calendar days, or an order for relief shall be entered against the Company under any bankruptcy laws as now or hereafter in effect; or Company shall dissolve or liquidate, or be dissolved or liquidated, or cease to legally exist; or Company (if a natural person) shall die;

(ix) the Security Interest shall, for any reason (other than Holder's failure to renew the UCC financing statement), cease to be a first priority, perfected security interest in and to any Collateral;

(x) the Company shall default under any of the Secured Obligations;

(xi) any creditor of the Company takes any action to reclaim or repossess any portion of Company's assets, or any creditor of the Company takes any action to levy upon, garnish, attach or execute upon any portion of Company's assets;

(xii) the person who executes this Agreement on behalf of Company dies or is legally declared to be incompetent; and

(xiii) any event occurs that would cause any lien creditor, as that term is defined in section 9-102 of the UCC, to take priority over the Security Interest created under the Agreement.

**9. SECURITY INTEREST; RIGHTS AND REMEDIES OF THE HOLDER.**

(a) The Company grants a Security Interest in the Collateral to the Holder to secure the payment or performance of the Secured Obligations.

(b) (i) The Company hereby represents and warrants that (A) the Security Interest constitutes a valid security interest under the UCC securing the Secured Obligations; and (B) when UCC financing statements shall have been filed in the appropriate filing office, the Security Interest shall constitute a perfected security interest in the Collateral, prior to all other Liens and rights of others therein and (C) the Company has rights in, and marketable title to, the Collateral; (ii) The Company covenants that it shall not (A) change its name, identity or corporate structure, or (B) its jurisdiction of organization, unless it shall have given Holder prior written notice and delivered an opinion of counsel with respect to the continued perfected Security Interest. The Company shall not in any event change the jurisdiction of incorporation or transfer any assets (to a subsidiary or otherwise) if such change would cause the Security Interest in such Collateral to lapse or cease to be perfected; and (iii) The Company covenants that it shall, from time to time, at its expense, take such action that may be necessary or desirable, or that Holder may reasonably request, in order to create, preserve, perfect, confirm or validate the Security Interest, or to enable Holder to exercise or enforce any of its rights, powers and remedies hereunder with respect to any of the Collateral.

DocuSign Envelope ID: 30725520-A08F-473B-A8F     7238DB1C39

(c) The Company agrees that Holder may file any financing statement, Lien entry form or other document that Holder requires in order to perfect, amend or continue Holder's Security Interest in the Collateral.

(d) If an Event of Default occurs, then at any time thereafter, Holder may exercise all rights of a secured party under the UCC (whether or not in effect in the jurisdiction where such rights are exercised). Holder may be the purchaser of any or all of the Collateral sold at any public sale. The Company will perform all actions as Holder in its sole discretion deems necessary or advisable in order that any such sale may be made in compliance with law. Upon any such sale, the Collateral shall be delivered, assigned and transferred to Holder. At any such sale, Holder shall hold the Collateral free from any claim or right, and the Company, to the extent permitted by law, hereby specifically waives all rights of redemption, stay or appraisal which it has or may have under any law now existing or hereafter adopted. By way of example, and not by way of limitation, Holder may exercise any one or more of the following rights and remedies, immediately and without prior notice: (i) Holder may declare the entire outstanding Repayment Amount immediately due and payable; (ii) Holder may set off and charge against any deposit accounts of Company or Guarantor (as well as any money, instruments, securities, documents, chattel paper, credits, claims, demands, income and any other property, rights and interests of Company or Guarantor) which at any time shall come into the possession or custody or under the control of Holder (including, without limitation the Business Account) or any of its agents, Affiliates or correspondents, any and all obligations due hereunder; (iii) Holder may debit, via ACH, from the Business Account any amounts due or accelerated; (iv) Holder may require the Company to deliver to Holder all or any portion of the Collateral and certificates of title or documents relating to the Collateral; (v) Holder may require the Company to assemble all or any portion of the Collateral and certificates of title or documents relating to the Collateral and make it available to Holder at a time and place designated by Holder; (vi) Holder may enter the Company's property to take possession of and remove all or any portion of the Collateral and certificates of title or documents relating to the Collateral (including other goods not covered by this Agreement), provided that such entry can be accomplished without a breach of the peace and provided further that Holder makes reasonable efforts to return goods not covered by this Agreement to the Company after repossession; (vii) Holder may sell, lease, transfer, or otherwise deal with the Collateral or Proceeds hereof in Holder's own name or that of Company. Holder may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Holder will give Company, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any Person who, after an Event of Default occurs, enters into and authenticates an agreement waiving that Person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least 10 calendar days before the time of the sale or disposition; (viii) Holder may have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the Proceeds, over and above the cost of the receivership, against the Secured Obligations. The receiver may serve without bond if permitted by law. Holder's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Secured Obligations by a substantial amount. Employment by Holder shall not disqualify a Person from serving as a receiver; (ix) Holder may collect the payments, rents, income, and revenues from the Collateral. Holder may at any time in Holder's discretion transfer any Collateral into Holder's own name or that of Holder's nominee and receive the payments; rents, income and revenues therefrom and hold the same as security for the Obligations or apply it to payment of the Obligations in such order of preference as Holder may determine, insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Holder may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose or realize on the Collateral as Holder may determine, whether or not any amount included within the Obligations

is then due. For these purposes, Holder may, on behalf of and in the name of Company, receive, open and dispose of mail addressed to Company, change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment or storage of any Collateral. To facilitate collections, Holder may notify account debtors and Obligors on any Collateral to make payments directly to Holder; (x) If Holder chooses to sell any or all of the Collateral, Holder may obtain a judgment against Company for any deficiency remaining on the Secured Obligations due to Holder after application of all amounts received from the exercise of the rights provided in this Agreement. Company shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper; (xi) Holder shall have all the rights and remedies of a secured creditor under the provisions of the UCC, as amended from time to time. Holder shall have and may exercise any and all other rights and remedies it may have available at law, in equity or otherwise; (xii) If Company fails to obtain or maintain any required insurance, then in addition to such failure being an Event of Default, Holder may obtain such insurance at Company's expense; (xiii) If any action or proceeding is commenced that would materially affect Holder's interest in the Collateral or if Company fails to comply with any provision of this Agreement including but not limited to Company's failure to discharge or pay when due any amounts Company is required to discharge or pay under this Agreement, Holder on Company's behalf may (but shall not be obligated to) take any action that Holder deems appropriate, including but not limited to discharging or paying all taxes, Liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral; (xiv) In the event of any Event of Default and/or acceleration of this Agreement by the Holder pursuant to Section 9(d), the Company shall pay to Holder the outstanding balance of the Repayment Amount owing hereunder, provided, Holder may debit, via ACH, such amount from the Business Account, plus deduct an amount for reimbursement of Holder's expenses (including collection, court and attorney's fees) plus interest on such expenses at a rate of fifteen percent (15%) per annum, or the highest rate permitted by applicable law, whichever shall be less. In addition, the Holder shall have all remedies permitted at law, equity, or by statute for such breach, in addition to all the remedies outlined herein being cumulative and not exclusive; (xv) The Company hereby irrevocably appoints Holder its true and lawful attorney, said appointment being coupled with an interest, with full power of substitution, in the name of the Company for the sole use and benefit of Holder, but at the Company's expense, to the extent permitted by law, to exercise, at any time and from time to time while an Event of Default has occurred and is continuing, all of the following powers with respect to all or any of the Collateral: (A) to demand, sue for, collect, receive and give acquittance for any and all monies due or to become due thereon or by virtue thereof; (B) to settle, compromise, compound, prosecute or defend any action or proceeding with respect thereto; (C) to sell, transfer, assign or otherwise deal in or with the same or the Proceeds thereof, as if Holder were the absolute owner thereof; and (D) to extend the time of payment of any or all thereof and to make any allowance and other adjustments with reference thereto; provided that Holder shall give the Company not less than ten (10) calendar days' prior written notice of the time and place of any sale or other disposition of any of the Collateral, except any Collateral which is perishable, threatens to decline speedily in value or is customarily sold on a recognized market. The Company agrees that such notice constitutes "reasonable notification" within the meaning of Section 9-610(b) of the UCC.

(e) All expenses of Holder taken in exercising its rights and remedies under this Section 9 shall be deemed Additional Expenses. Additional Expenses will be added to the Company's obligations under this Agreement and, at Holder's option, will: (i) be payable on demand; (ii) be added to the balance of the Secured Obligations and be apportioned among and be payable with any installment payments to become due during the remaining term of the Secured Obligations; or (iii) be treated as a balloon payment that will be due and payable on the Maturity Date.

(f) If Company fails to preserve the Collateral, or sell, offer to sell, transfer or otherwise dispose of any or all of the Collateral without Holder's prior written authorization, Holder at its sole discretion, may declare the entire outstanding

DocuSign Envelope ID: 30725520-A08F-473B-A8F     7238DB1C39

Repayment Amount immediately due and payable and, in addition to any other rights and remedies available to Holder at law, in equity or otherwise, impose a default fee in the amount of five thousand Dollars ($5,000) to Company, payable immediately, upon demand.

(g) Except as may be prohibited by applicable law, all of Holder's rights and remedies, whether evidenced by this Agreement, any related documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Holder to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Company under the Agreement, after Company's failure to perform, shall not affect Holder's right to declare a default or to exercise its remedies.

**10. REPLACEMENT OF NOTE.** Upon receipt by the Company of notice from Holder of the loss, theft, destruction or mutilation of this Agreement, and (in case of loss, theft or destruction) of indemnity reasonably satisfactory to it, and upon reimbursement of all reasonable expenses incidental thereto, and (if mutilated) upon surrender and cancellation of this Agreement, the Company shall within three (3) Business Days after receipt of such notice, make and deliver to Holder a replacement note of upon identical terms and conditions, and dated as of the date, hereof.

**11. FURTHER ASSURANCES.** Company agrees to execute any further documents, and to take any further actions requested by Holder to evidence or perfect the Security Interest, to maintain the first priority of the Security Interest, or to effectuate the rights granted to Holder herein or in any of the documents or agreements comprising the Secured Obligations. Company shall have possession of the Collateral except where otherwise provided in this Agreement or where Holder chooses to perfect its Security Interest by possession or control.

**12. FINANCIAL INFORMATION.** Company and Guarantor(s) hereby represent and warrant that all information provided by or on their or any signing principal's behalf to Holder in connection with or pursuant to this Agreement is true, complete and accurate. Company and Guarantor(s) shall furnish Holder, such information, from time to time, as may be requested for the purpose of deciding whether to approve or for any update or renewal, extension of credit or other lawful purpose. Company also agrees that Holder may release information to comply with governmental reporting or legal process that Holder believes may be required, whether or not such is in fact required, or when necessary completing a transaction, or when investigating a loss or potential loss.

**13. NOTICES.** All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (a) upon personal delivery, (b) the fifth (5th) Business Day after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (c) one (1) calendar day after deposit with a nationally recognized overnight courier, specifying next calendar day delivery, with written verification of receipt. All communications shall be sent to such address or facsimile number as the party to whom notice is to be given may have furnished to the other party in writing in accordance herewith.

**14. SURVIVAL.** All covenants, agreements, representations and warranties made herein shall survive the execution hereof, and shall remain in effect until full repayment and performance by Company of all the Secured Obligations.

**15. NON-EXCLUSIVITY AND WAIVER OF RIGHTS.** No failure to exercise and no delay in exercising on the part of any party, any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege preclude any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of any other rights or remedies provided by law.

**16. ASSIGNMENT.** This Agreement shall bind and inure to the benefit of the respective successors and assigns of each of the parties hereto; provided, however,

that Company may not assign this Agreement or any rights or duties hereunder and any prohibited assignment shall be absolutely void. No consent to an assignment by Holder shall release Company from its obligations. Holder may assign this Agreement and its rights and duties hereunder and no consent or approval by Company is required in connection with any such assignment. Holder reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in Holder's rights and benefits hereunder. In connection with any assignment or participation, Holder may disclose all documents and information that Holder now or hereafter may have relating to Company or Company's business. To the extent that Holder assigns its rights and obligations hereunder to another party, Holder thereafter shall be released from such assigned obligations to Company and such assignment shall affect a novation between Company and such other party.

**17. ASSIGNEES TO BE BOUND.** This Agreement shall bind and shall inure to the benefit of the heirs, legatees, executors, administrators, successors and assigns of Holder and shall bind all persons who become bound as a debtor to this Agreement.

**18. WAIVERS, CONSENTS AND COVENANTS.** Company, any endorser or guarantor hereof (individually an "Obligor" and collectively "Obligors" for purposes of this paragraph) and each of them jointly and severally: (a) waive presentment, demand, protest, notice of demand, notice of intent to accelerate, notice of acceleration of maturity, notice of protest, notice of nonpayment, notice of dishonor, and any other notice required to be given under the law to any Obligor in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, any indorsement or guaranty of this Agreement, or any other documents executed in connection with this Agreement or any other Agreement or other loan documents now or hereafter executed in connection with any obligation of Company to Holder (the "Loan Documents" for purposes of this paragraph); (b) consent to all delays, extensions, renewals or other modifications of this Agreement or the Loan Documents, or waivers of any term hereof or of the Loan Documents, or release or discharge by Holder of any of Obligors, or release, substitution or exchange of any security for the payment hereof, or the failure to act on the part of Holder, or any indulgence shown by Holder (without notice to or further assent from any of Obligors), and agree that no such action, failure to act or failure to exercise any right or remedy by Holder shall in any way affect or impair the obligations of any Obligors or be construed as a waiver by Holder of, or otherwise affect, any of Holder's rights under this Agreement, under any indorsement or guaranty of this Agreement or under any of the Loan Documents; and (c) agree to pay, on demand, all costs and expenses of collection or defense of this Agreement or of any indorsement or guaranty hereof and/or the enforcement or defense of Holder's rights with respect to, or the administration, supervision, preservation, or protection of, or realization upon, any property securing payment hereof, including, without limitation, reasonable attorney's fees, including fees related to any suit, mediation or arbitration proceeding, out of court payment agreement, trial, appeal, bankruptcy proceedings or other proceeding, in such amount as may be determined reasonable by any arbitrator or court, whichever is applicable.

**19. GUARANTY.** Guarantor hereby unconditionally guarantees the full and punctual payment of the Repayment Amount, and the full and punctual payment of all other amounts payable by the Company under this Agreement. Upon failure by the Company to pay punctually any such amount, Guarantor shall forthwith on demand pay the amount not so paid at the place and in the manner specified in this Agreement. The obligations of Guarantor hereunder shall be unconditional and absolute and shall not be released or discharged until the Repayment Amount or any other amount payable by the Company under this Agreement shall have been paid in full. Guarantor irrevocably waives acceptance hereof, presentment, demand, protest and any notice not provided for herein, as well as any requirement that at any time any action be taken by any Person against the Company or any other Person. Guarantor waives notice of acceptance of the guaranty and notice of defaults by the Company, and consents to any extension or extensions of the time or times of the payment of the Obligations, or any portion thereof, and to any change in form, or renewal at any time, of such Obligations, or any part thereof, or to any evidence thereof taken at any time by Holder. If acceleration of the time for payment



DocuSign Envelope ID: 30725520-A08F-473B-A8      7238DB1C39

of any amount payable under this Agreement is stayed upon the insolvency, bankruptcy or reorganization of the Company, such amount shall nonetheless be payable by Guarantor hereunder forthwith on demand by Holder.

**20. WAIVERS BY GUARANTOR.**

(a) Guarantor waives notice of acceptance of this Guaranty, notice of any liabilities or obligations including, without limitation, the Secured Obligations, to which it may apply, presentment, demand for payment, protest, notice of dishonor or nonpayment of any liabilities, notice of intent to accelerate, notice of acceleration, and notice of any suit or the taking of other action by Holder against Company, Guarantor or any other Person, any applicable statute of limitations and any other notice to any party liable on any loan document evidencing the Secured Obligations and this Agreement (including Guarantor).

(b) Each Guarantor also hereby waives any claim, right or remedy which such Guarantor may now have or hereafter acquire against Company that arises hereunder and/or from the performance by any other Guarantor hereunder including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Holder against Company or against any security which Holder now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.

(c) Guarantor also waives the benefits of any provision of law requiring that Holder exhaust any right or remedy, or take any action, against Company, any Guarantor, any other Person and/or property including but not limited to the provisions of the California Civil Code Sections 2845, 2849 and 2850, inclusive, as amended, or otherwise. This is a guaranty of payment and not of collection.

(d) Holder may at any time and from time to time without notice to Guarantor (except as required by law), without incurring responsibility to Guarantor, without impairing, releasing or otherwise affecting the obligations of Guarantor, in whole or in part, and without the indorsement or execution by Guarantor of any additional consent, waiver or guaranty: (i) change the manner, place or terms of payment, or change or extend the time of or renew, or change any interest rate or alter any liability or obligation or installment thereof, or any security therefor; (ii) loan additional monies or extend additional credit to Company, with or without security, thereby creating new liabilities or obligations the payment or performance of which shall be guaranteed hereunder, and the Guaranty herein made shall apply to the liabilities and obligations as so changed, extended, surrendered, realized upon or otherwise altered; (iii) sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property at any time pledged or mortgaged to secure the liabilities or obligations and any offset there against; (iv) exercise or refrain from exercising any rights against Company or others (including Guarantor) or act or refrain from acting in any other manner; (v) settle or compromise any liability or obligation or any security therefor and subordinate the payment of all or any part thereof to the payment of any liability or obligation of any other parties primarily or secondarily liable on any of the liabilities or obligations; (vi) release or compromise any liability of Guarantor hereunder or any liability or obligation of any other parties primarily or secondarily liable on any of the liabilities or obligations; or (vii) apply any sums from any sources to any liability without regard to any liabilities remaining unpaid.   The phrases "liabilities" and "obligations" as used herein shall include, without limitation, the Secured Obligations and this Agreement.

**21. ARBITRATION PROVISION.** (a) READ THIS PROVISION CAREFULLY. IT AFFECTS YOUR RIGHT TO A JURY TRIAL, YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION AND OTHER RIGHTS. Any and all disputes, claims or controversies by any party hereto (including any Guarantor), arising out of or in connection with this Agreement or the interactions of the parties with each other, no matter how described, pleaded or styled, including claims arising in tort, in equity and/or in contract, shall be decided exclusively and finally by binding individual (not class or multi-party) arbitration. However, a court shall decide all

disputes about the validity, enforceability, coverage or scope of this Arbitration Provision (as opposed to any questions about the validity, enforceability, coverage or scope of this Agreement as a whole).

(b) THERE SHALL BE NO RIGHT TO A JURY TRIAL. Any necessary arbitration hearing shall be conducted at a location reasonably convenient to Company. The arbitration shall be conducted (i) before the American Arbitration Association (the "AAA"), pursuant to the AAA Commercial Arbitration Rules, (ii) before JAMS under its Streamlined Arbitration Rules & Procedures or its Comprehensive Arbitration Rules & Procedures, as applicable or, (iii) if both AAA and JAMS are not able or willing to handle the arbitration, by an arbitrator selected by the parties jointly or by a court. The AAA Commercial Arbitration Rules are available online at www.adr.org and can be also be obtained by phone at 1-800-778-7879, by mail at 1633 Broadway, 10th Floor, New York, New York 10019 or upon written request sent to Holder. JAMS rules are available online at www.jamsadr.com and can also be obtained by phone at 1-800-352-5267, by mail at 620 Eighth Avenue, 34th Floor, New York, NY 10018 or upon written request sent to Holder. Notwithstanding the foregoing, in the event of any conflict between this Arbitration Provision and the arbitration rules that would otherwise apply, this Arbitration Provision will govern.

(c) The arbitration shall be conducted by one neutral arbitrator appointed by the arbitration company or as otherwise provided in Section 21(b). The arbitrator shall have actual experience in and knowledge of Company financing transactions to the greatest extent practicable, unless the parties agree otherwise. The arbitrator shall have the authority to award any monetary and nonmonetary relief otherwise available to either party in an action otherwise prosecuted in court, including injunctive and other provisional relief, provided that the arbitrator shall have no authority to award relief for any Person that is not a party to this Agreement. Further, either party shall have the right to apply to any court of competent jurisdiction (subject to Paragraph 25 of this Agreement) for provisional relief of any kind, provided however that the final decision on any controversies or disputes between the parties shall be decided by the arbitrator. Judgment on the arbitration award may be entered by any court of competent jurisdiction, notwithstanding Paragraph 25 of this Agreement. The cost of initiating the arbitration and the arbitrator's compensation shall be paid by Holder. Each party shall bear its own attorneys' fees, except as otherwise provided by law.

(d) The parties hereto acknowledge and agree that, notwithstanding any language herein to the contrary: (1) the arbitration shall be solely between the parties to this Agreement; and (2) no class arbitration or other representative action may be undertaken by the arbitrator.

If any portion of this Arbitration Provision cannot be enforced, the rest of this Arbitration Provision will continue to apply, except that: (1) if a court rules that the arbitrator can decide a claim on a class or other representative basis and the court's ruling is not reversed on appeal, only this sentence will apply and the remainder of this Arbitration Provision will be void; and (2) if a claim is brought seeking public injunctive relief and a court determines that the restrictions in this Arbitration Provision prohibiting the arbitrator from awarding relief on behalf of third parties are unenforceable with respect to such claim (and that determination becomes final after all appeals have been exhausted), the claim for public injunctive relief will be determined in court and any individual claims seeking monetary relief will be arbitrated. In such a case the parties will request that the court stay the claim for public injunctive relief until the arbitration award pertaining to individual relief has been entered in court.

(e) The Federal Arbitration Act shall govern the interpretation, implementation and enforcement of this Arbitration Provision to the fullest extent possible, to the

DocuSign Envelope ID: 30725520-A08F-473B-AE      7238DB1C39

exclusion of all otherwise potentially applicable state law, regardless of the location of the arbitration proceedings or the nature of the disputes or controversies between the parties to this Agreement. Company may elect to opt out of this Arbitration Provision by sending written notice to Holder. Such written notice must be received by Holder before 5:00 p.m. Eastern Time on the tenth (10th) calendar day after this Agreement is executed, or such notice shall be of no force and effect. The foregoing time limit shall be strictly construed. Opting out of this Arbitration Provision shall not terminate the Agreement or otherwise affect in any way any of the other rights and obligations of the parties hereto under the terms of the Agreement.

Company's Initials: _____

**22 PARTIAL INVALIDITY.** Any term or provision of this Agreement shall be ineffective to the extent it is declared invalid or unenforceable, without rendering invalid or enforceable the remaining terms and provisions of this Agreement. The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision herein and the invalidity or unenforceability of any provision of this Agreement or any agreement incorporated herein by reference or referenced herein to any Person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other Persons or circumstances.

**23. ATTORNEYS' FEES AND COLLECTION COSTS.** To the extent not prohibited by applicable law, Company shall pay to Holder on demand any and all expenses, including, but not limited to, collection costs, all attorneys' fees and expenses, and all other expenses which may be expended by Holder to obtain or enforce payment of Obligations either as against Company or any Guarantor or surety of Company or in the prosecution or defense of any action or concerning any matter growing out of or connected with this Agreement, the Collateral, or any of Holder's rights therein or thereto, including, without limiting the generality of the foregoing, any counsel fees or expenses incurred in any bankruptcy or insolvency proceedings and all costs and expenses (including search fees) incurred or paid by Holder in connection with the administration, supervision, protection or realization on any security held by Holder for the debt secured hereby, whether such security was granted by Company or by any other Person primarily or secondarily liable (with or without recourse) with respect to such debt; and all costs and expenses incurred by Holder in connection with the defense, settlement or satisfaction of any action, claim or demand asserted against Holder in connection therewith, which amounts shall be considered advances to protect Holder's security, and shall be secured hereby. All such costs and expenses shall be deemed Additional Expenses.

**24. EXECUTION IN COUNTERPARTS AND BY FACSIMILE.** This Agreement may be executed in two or more counterparts, each of which counterparts by original or facsimile signature, shall be deemed to be an original, and all such counterparts together shall constitute one and the same instrument.

**25. APPLICABLE LAW, VENUE AND JURISDICTION.** This Agreement and the rights and obligations of Company and Holder shall be governed by and interpreted in accordance with the law of the State of California. In any litigation in connection with or to enforce this Agreement or any indorsement or guaranty of this Agreement or any Loan Documents, Obligors, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of California or the United States located within the State of California and expressly waive any objections as to venue in any such courts. Nothing contained herein shall, however, prevent Holder from complying with applicable law (including any and all rules, regulations, interpretations, and determinations of any applicable state or federal regulatory

agency), bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law. Company waives any requirement of personal service of process. Any summons and complaint shall be deemed properly served and shall confer personal jurisdiction over Company if served by registered mail or by certified mail.

**26. INTERPRETATION.** Paragraph and section headings used in this Agreement are for convenience only, and shall not affect the construction of this Agreement. Neither this Agreement or any uncertainty or ambiguity herein shall be construed or resolved against Holder or Company, whether under any rule of construction or otherwise. On the contrary, this Agreement has been reviewed by all parties and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of all parties hereto.

**27. JURY TRIAL WAIVER.** To the extent that the provisions of Section 21 are not enforced for any reason, Company and Holder waive their right to a trial by jury of any claim or cause of action based upon, arising out of or related to the Agreement and all other documentation evidencing the Obligations, in any legal action or proceeding.

**28. USURY SAVINGS CLAUSE.** The Company and the Holder intend to comply with applicable usury laws and therefore, under no circumstances shall Holder be entitled to collect, receive or apply as interest any interest, fees, charges or other payments equivalent to interest in excess of the maximum amount of interest which may be charged under applicable law (the "**Maximum Rate**"). It is the parties' belief, understanding and intention that the applicable law is federal law and, where federal law requires, the law of California. If Holder ever collects, receives or applies as interest any such amount, then the amount which would be excessive interest but for the application of this Section 28 shall first be applied to reduce the balance of the Principal Amount and then, if the balance of Principal is reduced to zero, then the remaining excess shall be returned to Company.

**29. CLASS ACTION WAIVER.** Holder and Company waive any right to assert any claim against one another by means of any class action or representative action, whether as a class representative or as a member of a class. If, notwithstanding the foregoing waiver, a court or law permits a party to this Agreement to participate in a class or representative action, then the parties hereto nevertheless agree that the prevailing party shall not be entitled to recover attorneys' fees or costs associated with pursuing the class or representative action, and the party who initiates or participates as a member of the class will not submit a claim or otherwise participate in any recovery secured through the class or representative action.

**30. AMENDMENTS AND WAIVERS.** No modification, amendment or waiver of any provision of, or consent required by, this Agreement, nor any consent to any departure here from, shall be effective unless it is in writing and signed by Holder.

**31. ENTIRE AGREEMENT.** Any application Company signed or otherwise submitted in connection with the loan, secured promissory note, irrevocable ACH debit authorization and any other documents required by Holder now or in the future in connection with this agreement are hereby incorporated into and made part of this Agreement. This Agreement is the entire agreement of the parties with respect to the subject matter hereof and supersedes any prior written or verbal communications or instruments relating thereto.

**32. TIME OF THE ESSENCE.**
Time shall be of the essence of all of Company's obligations hereunder.

**The remaining space on this page is intentionally left blank**

DocuSign Envelope ID: 30725520-A08F-473B-A8      7238DB1C39

You consent that your electronic signature on agreements and documents has the same legal and moral effect as if you signed such agreements and documents in ink, and will be deemed valid, authentic, enforceable and binding.

In Witness Whereof, the undersigned have executed this Agreement under seal as of the date first below written.

**Company:** Ronda Nadine Baldwin-Kennedy DBA Law Office of Ronda Baldwin-Kennedy / Ronda N Baldwin-Kennedy

By: _____

Name: Ronda Nadine Baldwin-Kennedy

Title: Owner

Date: 6/27/2019

**Guarantor**

_____

Name: Ronda Nadine Baldwin-Kennedy

Address: 217 Smoke Tree Avenue, Oak Park, CA, 91377

**Accepted:**

**Holder:** AXOS Bank

By: _____

Name: Liz Nutting

Title: SVP, Strategic Partnerships and Network Relations

DocuSign Envelope ID: 30725520-A08F-473B-A8F   7238DB1C39

bfs capital

Phone: (866) 914-3787
Fax: (888) 258-3698

## BUSINESS INFORMATION

**Legal Business Name:**
Ronda Nadine Baldwin-Kennedy

**DBA (if different):**
Law Office of Ronda Baldwin-Kennedy / Ronda N Baldwin-Kennedy

| **Legal Entity:** ☐ Corp ☐ LLC ☑ Sole Prop ☐ LP ☐ Other Sole Proprietor | **Date Business Established (MM/YYYY):** 4/2015 | **Date In Control (MM/YYYY):** 4/2015 |
|---|---|---|

**Business Classification:**   ☐ Retail   ☐ Restaurant   ☐ Services   ☐ Manufacturer/Wholesaler   ☐ Internet   ☐ Mail Order/Telephone Order

**Physical Address:** 1056 East Meta Street Suite #201 Ventura CA 93001

**Mailing Address:**

| **Business Phone:** 951-268-8977 | **Business Fax:** | **Mobile:** 661-600-2264 |
|---|---|---|

**E-Mail:** ronda@lorbk.com | **Website:** http://www.lorbk.com

**Tax ID Number or Business Number:** ___ 2651 | **Terminal/POS Make/Model:**

**Property Ownership:** ☑ Lease ☐ Own   **Years in Control:** _4_   **Months in Control:** _3_   | **Products Sold:** Law Office

**Landlord / Mortgage Company Name:** | **Landlord Contact Name:** Terry Foley

**Landlord / Mortgage Company Phone:** 805-643-9898 | **Rent / Mortgage Payment:** $ 0

| **Has the business or any principal ever filed for Bankruptcy Protection?** ☐ Yes ☐ No | **Are there any pending, threatened, or recently filed claims, judgments or tax liens against the business or any principals?** ☐ Yes ☐ No |
|---|---|

## COMPANY INFORMATION

| **Average Monthly Card Sales:** $ | **Total Monthly Sales:** $ | **Annual Gross Sales:** $1254228 |
|---|---|---|

**Desired Funding Amount:** $ | **Use of Funds:** Expansion

**Current Loan/Advance Balance?** ☐ Yes: *Balance $___ | Held With: ___ | ☐ No Current Loan/Advance

## OWNER / PRINCIPAL INFORMATION

| **Name:** Ronda Nadine Baldwin-Kennedy | **Title:** Owner | **% of Ownership:** 100% |
|---|---|---|

**Home Address:** 217 Smoke Tree Avenue Oak Park CA 91377

**Home Phone:** 661-600-2264 | **Cell Phone:** 661-600-2264

**E-Mail Address:** ronda@lorbk.com

| **Date of Birth (MM/DD/YY):** ___/1972 | **Social Security or Social Insurance#:** ___ -5083 |
|---|---|

**Driver's License #:** ___ | **Driver's License State or Province of Issuance:** CA

## OWNER / PRINCIPAL INFORMATION

| **Name:** | **Title:** | **% of Ownership:** |
|---|---|---|

**Home Address:**

**Home Phone:** | **Cell Phone:**

**E-Mail Address:**

**Date of Birth (MM/DD/YY):** | **Social Security or Social Insurance#:**

**Driver's License #:** | **Driver's License State or Province of Issuance:**

You consent that your electronic signature on agreements and documents has the same legal and moral effect as if you signed such agreements and documents in ink, and will be deemed valid, authentic, enforceable and binding. By signing below, the Merchant and its undersigned Owner(s) and Principal(s) certify that all information and documents submitted in connection with this application are true, correct and complete. Additionally the Merchant and each such Owner and Principal, individually, authorizes Business Financial Services, Inc., BFS West, Inc. and Small Business Term Loans, Inc., collectively BFS Capital, and AXOS Bank ("AXOS"), Member FDIC, or any of their respective agents, partners, and affiliates to: (1) obtain and use non-business consumer credit reports and any other information regarding such Merchant, Owner(s) and Principal(s) from third parties, (2) to verify any information provided on this application; and (3) to obtain the 12 most recent monthly reports detailing Merchant's payment card processing activity from its card processor or any agent or other third party utilized by that processor to authorize, clear and/or settle payment card payments. The products offered by BFS Capital can be either business loans or merchant cash advances. Business loans may be provided by either BFS Capital or AXOS. These products are not consumer loans or consumer advances. Products subject to lender or, in the case of merchant cash advances, funder, approval. Fees apply.

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT** – To help the government fight the funding of terrorism and money laundering activities, federal law requires financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**Owner/Principal Signature:** *Ronda Nadine Baldwin-kennedy* | **Owner/Principal Signature:** _____

**Print Name:** Ronda Nadine Baldwin-Kennedy | **Print Name:** _____

*Merchant Application Rev. 05/2019*

PLD-C-001(2)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Red Target, LLC v.  Ronda Nadine Baldwin-Kennedy, et al. | |

<u>2nd</u>_____   **CAUSE OF ACTION—Common Counts**
_(number)_

ATTACHMENT TO  [✔] Complaint   [ ] Cross - Complaint

_(Use a separate cause of action form for each cause of action.)_

CC-1. Plaintiff _(name):_  Red Target, LLC dba SCJ Commercial Financial Services

alleges that defendant _(name):_  Ronda Nadine Baldwin-Kennedy, an individual dba Law Office of

became indebted to   [ ] plaintiff   [✔] other _(name):_  Business Financial      Ronda Baldwin-Kennedy

a.  [✔]   within the last four years
    (1)  [✔]   on an open book account for money due.
    (2)  [ ]   because an account was stated in writing by and between plaintiff and defendant in which it
           was agreed that defendant was indebted to plaintiff.

b.  [✔]   within the last   [ ] two years   [✔] four years
    (1)  [ ]   for money had and received by defendant for the use and benefit of plaintiff.
    (2)  [✔]   for work, labor, services and materials rendered at the special instance and request of defendant
           and for which defendant promised to pay plaintiff.
           [✔]   the sum of $ 5,837.00
           [✔]   the reasonable value.
    (3)  [ ]   for goods, wares, and merchandise sold and delivered to defendant and for which defendant
           promised to pay plaintiff
           [ ]   the sum of $
           [ ]   the reasonable value.
    (4)  [ ]   for money lent by plaintiff to defendant at defendant's request.
    (5)  [ ]   for money paid, laid out, and expended to or for defendant at defendant's special instance and
           request.
    (6)  [✔]   other _(specify):_
           Business Financial Services Inc. assigned the claim and right to recover its
           receivable to Plaintiff who is now the lawful owner of the receivables with right
           to enforce payment obligations of the claims.

CC-2. $ 5,837.00 _____, which is the reasonable value, is due and unpaid despite plaintiff's demand,_

plus prejudgment interest   [ ] according to proof   [✔] at the rate of _____10_____ percent per year

from _(date):_  December 23, 2019

CC-3.  [✔]   Plaintiff is entitled to attorney fees by an agreement or a statute
        [ ]   of $
        [✔]   according to proof.

CC-4.  [✔]   Other:
        Costs of suit

Page _____3_____

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(2) [Rev. January 1, 2009]

**CAUSE OF ACTION—Common Counts**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

COM49119

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, number, and address):*
Gurstel Law Firm, P.C.
Angie Hong Hoar (#212152); Jennifer Thomas (#335997); Christina Melhouse (#201818)
3914 Murphy Canyon Rd., Ste. A125, San Diego, CA 92123
TELEPHONE NO. 877-344-4002    FAX NO. *(Optional)* 877-750-6335
E-MAIL ADDRESS: cacommercial@gurstel.com
ATTORNEY FOR *(Name)* Plaintiff Red Target, LLC

*FOR COURT USE ONLY*

VENTURA
SUPERIOR COURT
**FILED**

**NOV 16 2022**

**BRENDA L. McCORMICK**
Executive Officer and Clerk
BY:_____, Deputy

**Erica Martinez**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** VENTURA
STREET ADDRESS: 800 South Victoria Ave.
MAILING ADDRESS: 800 South Victoria Ave.
CITY AND ZIP CODE: Ventura, CA 93009
BRANCH NAME: Hall of Justice - Civil Division

CASE NAME:
Red Target, LLC v. Ronda Nadine Baldwin-Kennedy, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☐ Unlimited (Amount demanded exceeds $25,000) ☒ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 56-2022-00572153-CL-CL-VTA |
|  |  | JUDGE: |
|  |  | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☒ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☒ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* 2
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 11-2-2022

Angie Hong Hoar, Esq.
_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET                                    **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF VENTURA

**800 South Victoria Avenue**
**Ventura , CA 93009**
**(805) 289-8525**

## NOTICE OF CASE ASSIGNMENT

Case Number: **56-2022-00572153-CL-CL-VTA**

Your case has been assigned for all purposes to the judicial officer indicated below. A copy of this Notice of Case Assignment must be served on all named defendants/respondents with the complaint or petition, and with any cross-complaint that names a new party to the underlying action.

| ASSIGNED JUDICIAL OFFICER | COURT LOCATION | DEPT/ROOM |
|---|---|---|
| Hon. Mark Borrell | Ventura | 40 |
| **EVENT TYPE** | | |
| | | |
| **EVENT DATE** | **EVENT TIME** | **EVENT DEPT/ROOM** |
| | | |

## SCHEDULING INFORMATION

**Judicial Scheduling Calendar Information**

Court calendars vary from courtroom to courtroom. You may contact the clerk's office for more information when you need to schedule a hearing before the judicial officer.

**Ex Parte Matters**

To set an ex parte hearing, contact the judicial secretary in the assigned department. Per Local Rule 15.03, all ex parte documents must be filed in the courthouse where the ex parte application shall be heard.

**Noticed Motions**

Contact the clerk's office to reserve a date for a law and motion matter. Per Local Rule 3.19, all law and motion documents must be filed in the courthouse where the motion shall be heard.

**Other Information**

Interpreter services are available upon request. If an interpreter is needed, complete and submit local form VN 250 or Judicial Council Form INT-100 as far in advance as possible when needed for a court hearing.

You can visit the court's website at www.ventura.courts.ca.gov for public access to non-confidential case information, local rules and forms, and other court information.

Clerk of the Court,

Date:  11/18/2022

By: *Erica Martinez*

Erica  Martinez, Clerk

VEN-FNR063

**NOTICE OF CASE ASSIGNMENT**

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF VENTURA**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial.  The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial.  Many courts encourage or require parties to try ADR before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral.  You can read more information about these ADR processes and watch videos that demonstrate them at *www.courtinfo.ca.gov/programs/adr/types.htm*.  A form for agreeing to use ADR is attached.

## Potential Advantages and Disadvantages

ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

## Most Common Types of ADR

**Mediation** – A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute.  The mediator does not decide the outcome, but helps the parties to do so.  Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners.

**Settlement Conferences** – A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement.  The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement.  Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration** – The parties present evidence and arguments to a neutral person called an "arbitrator" who then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed.  If the parties agree to *binding arbitration,* they waive their right to a trial and agree to accept the arbitrator's decision as final.  With *nonbinding arbitration,* any party may reject the arbitrator's decision and request a trial.  Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial, or want an expert in the subject matter of the dispute to make a decision.

## Local ADR Programs for Civil Cases

**Mediation** – The Ventura Superior Court has maintained a mediation program since April 1, 1993. Its goals are to speed resolution of cases by bringing the parties together before they have made a major economic and emotional investment in litigation, and to increase awareness of this effective method of alternative dispute resolution.

Mediators need not be attorneys, but must have 25 hours of formal mediation training by a recognized mediation training/education provider. Mediator duties include a brief review/preparation time and three hours of hearing time on a pro bono basis and pursuant to such rules as may be designated for mediators by the Ventura Superior Court.

Party Pay Mediation Panel – The court has a second mediation panel where mediators are paid by the parties rather than offering their services pro bono. Mediators on the "party pay" panel must have completed 25 hours of formal mediation training and have participated as mediator a minimum of 25 court assigned mediations with a minimum hearing time of two hours each from any California Superior Court. All mediators on the "party pay" panel will provide three hours of mediation services per case at the rate of $150 per hour to be shared equally by all participating parties.

Arbitration – Arbitration is normally an informal process in which a neutral person (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties. The parties can agree to binding or nonbinding arbitration. Binding arbitration is designed to give each side a resolution of their dispute when they cannot agree between themselves or with a mediator. If the arbitration is nonbinding, any party can reject the arbitrator's decision and request a trial.

Mandatory Early Settlement Conference – The MESC program was implemented through joint efforts of the Superior Court and the Ventura County Bar Association working primarily through the Bench/Bar Subcommittee. Cases that are appropriate for the program are identified and referred to a settlement officer to conduct a settlement conference. The parties have the opportunity for a serious exchange of facts, theories, and evaluations at the earliest possible time with an impartial attorney volunteer conducting the conference. The basic difference between cases assigned to the MESC and Mediation programs is the nature of the case and the relief sought. If the injury or damage is compensable in money damages and there is no emotional component or "hidden agenda" on the part of one or more of the parties, as is frequently the case in mediation cases, then the case is sent to the MESC program. MESC may be appropriate when negotiations between the parties have not proven successful.

Settlement Conference – Settlement Conferences may be mandatory or voluntary. In general, if the settlement conference is mandatory, ordered by the judge, the parties to the dispute and their attorneys will meet with a judge who conducts conference aimed at negotiating an agreement to settle the dispute rather than doing through the formal trial process.

**More Information about Court-Connected ADR:** Visit the court's webpage at www.ventura.courts.ca.gov.

**Dispute Resolution Programs Act (DRPA) funded ADR Program** - The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code 465 et seq.):
- Ventura Center for Dispute Settlement, 4001 Mission Oaks Blvd., #L, Camarillo, CA 93012
  805-384-1313
- Ventura County District Attorney's Consumer Mediation Unit
  805-654-3110

Private ADR – To find a private ADR program or neutral, search the internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

Legal Representation and Advice – To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California Courts Website at www.courtinfo.ca.gov/selfhelp/lowcost.

VN164

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address)             Telephone Number | FOR COURT USE ONLY |
|---|---|
| ATTORNEY FOR (Name): | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

☐    800 SOUTH VICTORIA AVE. VENTURA, CA 93009

PLAINTIFF/PETITIONER

DEFENDANT/RESPONDENT

| **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS** | CASE NUMBER: |
|---|---|

The parties and their attorneys stipulate that the claim(s) in this action shall proceed to the following alternative dispute resolution process:

☐ Private Mediation                    ☐ Volunteer Mediation _____

☐ Mandatory Early Settlement Conference    ☐ Assignment to Private Judge

☐ Binding Arbitration                  ☐ Non-Binding Arbitration

☐ Other (specify) : _____

It is further stipulated that the deadline for selection of a neutral and completion of the ADR process is: _____

_____          _____
Plaintiff (print)                                    Defendant (print)

_____          _____
Signature of Plaintiff                                Signature of Defendant

_____          _____
Plaintiff's Attorney (print)                            Defendant's Attorney (print)

_____          _____
Attorney's Signature                                  Attorney's Signature

Dated: _____             Dated: _____

**IT IS SO ORDERED.**

   IT IS FURTHER ORDERED THAT: _____

_____

_____

Dated: _____             _____
                                                    Judicial Officer

Optional Form                    **STIPULATION TO USE OF ALTERNATIVE DISPUTE**
VN164 (01/02)                              **RESOLUTION PROCESS**